UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| HEATHER MILLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 4:16-CV-1242-SPM |
| | ) |
| | ) |
| NANCY A. BERRYHILL,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION**

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of Defendant Nancy A. Berryhill, the Acting Commissioner of Social Security, denying the application of Plaintiff Heather Miller ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 10). Because I find substantial evidence to support the decision denying benefits, I will affirm the Commissioner's denial of Plaintiff's application.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was born on June 5, 1980, and was thirty-four years old as of the date of the hearing before the ALJ. (Tr. 533). She testified that she has worked in the past as an assistant manager at a fast-food restaurant, as a certified nurse's assistant in a nursing home, and as a cashier at Casey's. (Tr. 534-538). She testified that she left her most recent job because of her carpal tunnel syndrome and pancreatitis. (Tr. 538). She testified that she her carpal tunnel syndrome causes pain, numbness, and a tendency to drop things (despite a right carpal tunnel release in 2013); that she has diabetes that has led to neuropathy in her feet; that she has pancreatitis that causes abdominal pain; and that she has pain in her lower back and the muscles of her legs. (Tr. 539-40, 543). She testified that she can stand for ten or fifteen minutes before taking a break, can walk for about ten minutes, and can sit for about half an hour at the most. (Tr. 545). With regard to the facts in the Plaintiff's medical records, the Court adopts the facts set forth in Plaintiff's Statement of Uncontroverted Material Facts (Doc. 14-1), and Defendant's Statement of Additional Facts (Doc. 20-2). The Court will address specific facts as needed to address the parties' arguments.

On June 27, 2013, Plaintiff applied for DIB and SSI, alleging that she has been unable to work since June 6, 2013. (Tr. 639-54). Her applications were initially denied. (Tr. 576-80). Plaintiff filed a Request for Hearing by Administrative Law Judge ("ALJ"). (Tr. 583-87). On May 13, 2015, following a hearing, the ALJ found Plaintiff was not under a "disability" as defined in the Act. (Tr. 454-75). Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council. (Tr. 451-53). On June 30, 2016, the Appeals Council declined to review the case. (Tr. 1-5). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

## II.  STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c); *McCoy*, 648 F.3d at 611. At Step Three, the Commissioner evaluates whether the

claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his or her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. §§ 404.1520(e), 416.920(e). At Step Four, the Commissioner determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012).

## III. THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date, June 6, 2013; that Plaintiff has the severe impairments of diabetes mellitus, peripheral neuropathy, carpal tunnel syndrome, and pancreatitis; and that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 459-60). The ALJ found that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that she can only occasionally climb ramps and stairs; can only occasionally stoop, kneel, and crouch; should never climb ladders, ropes, or scaffolds; should never crawl; is limited to occasional handling, fingering, and feeling with the right upper extremity; and should never be exposed to hazards such as unprotected heights and dangerous machinery. (Tr. 460). The ALJ found that Plaintiff is unable to perform any of her past relevant work. (Tr. 469). However, relying on the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff would be able to perform occupations including counter clerk (Dictionary of Occupational Titles ("DOT") No. 249.366-010, light exertion level, 18,000 jobs in the national economy), tanning salon attendant (DOT No. 359.567-014, light exertion level, 1,100 jobs in the national economy); and operator (DOT No. 237.357-014, sedentary exertion level, 12,500 jobs in the national economy). (Tr. 470). The ALJ concluded that Plaintiff had not been under a disability, as defined in the Act, from June 6, 2013 through the date of his decision. (Tr. 470).

## IV. DISCUSSION

Plaintiff challenges the ALJ's decision on two grounds: (1) that the ALJ's RFC finding is too vague to allow meaningful review or to satisfy the specificity required by regulation and policy,

because the ALJ limited Plaintiff to "light work" instead of conducting a function-by-function analysis; and (2) that the ALJ erred by relying upon VE responses that were not supported by the DOT and lacked any other basis or reasonable explanation.

### A. Standard for Judicial Review

The decision of the Commissioner must be affirmed if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). "Substantial evidence 'is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012) (quoting *Moore*, 572 F.3d at 522). In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Id.* However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

### B. The RFC Limitation to "Light Work"

Plaintiff's first argument is that the ALJ's RFC finding is too vague to allow meaningful review or to satisfy the specificity required by regulation and policy, in that the ALJ described

Plaintiff's RFC as "light work" instead of making specific findings as to Plaintiff's physical abilities, such as the ability to sit, stand, walk, lift, carry, push, and pull.

A claimant's RFC is "the most a claimant can do despite her limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).

In this case, the ALJ made the following findings regarding Plaintiff's RFC:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally climb ramps and stairs, stoop, kneel and crouch; she should never climb ladders, ropes or scaffolds, or crawl; she is limited to occasional handling, fingering and feeling with the right upper extremity. She should never be exposed to hazards such as unprotected heights and dangerous machinery.

(Tr. 460). Similarly, in the hypothetical question posed to the VE, the ALJ described an individual who could "work at the light level" with additional limitations, but did not include specific sitting, standing, walking, lifting, carrying, pushing, or pulling limitations.

As Plaintiff points out, Social Security Ruling SSR 96-8p states:

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The functions described in the referenced regulations include physical functions such as sitting, standing, walking, lifting, carrying, pushing, pulling, reaching, handling, stooping, and crouching, as well

7

as mental functions and ability to deal with environmental conditions. *See* 20 C.F.R. §§ 404.1545 & 416.945.

Plaintiff argues that remand is required because the ALJ failed to conduct the function-by-function analysis required by SSR 96-8p before finding her capable of "light work." She argues that the ALJ should have provided specific details about Plaintiff's capacity to sit, stand, walk, lift, carry, push, and pull. Plaintiff argues that this is particularly problematic because the ALJ found that she could do "light" work, and there are a variety of combinations of functional limitations that might permit a person to perform "light" work. "Light work" is defined in the regulations as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b) & 416.967(b).[2] Plaintiff argues that because of the different activities that might constitute "light work," it is unclear what specific activities the ALJ found Plaintiff was

---

[2] Similarly, the DOT defines light work as follows:

> Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible. NOTE: The constant stress and strain of maintaining a production rate

8

capable of performing. In addition, Plaintiff argues that the VE might not have been clear on what actual functional limitations were being described in the hypothetical question. For example, the VE could have interpreted a hypothetical question limiting an individual to "light work" to be describing someone capable of a good deal of walking or standing, but alternatively, he could have interpreted such a hypothetical question to be describing someone who needed to sit most of the time but was capable of pushing and pulling of arm legs and controls.

In *Depover v. Barnhart*, 349 F.3d 563 (2003), the Eighth Circuit considered a somewhat similar situation in which the ALJ's RFC finding did not address Plaintiff's ability to sit, stand, or walk, but did include limitations on Plaintiff's ability to lift, carry, bend, stoop, squat, kneel, crawl, climb, and work around moving machinery and heights. *Id.* at 567. The Eighth Circuit stated, "although we would have preferred that he had made specific findings as to sitting, standing, and walking, we do not believe that he overlooked those functions." *Id.* The court noted that "all of the functions that the ALJ specifically addressed in the RFC were those in which he found a limitation, thus giving us some reason to believe that those functions that he omitted were those that were not limited"; that the ALJ had asked an alternative hypothetical question that did include limitations on sitting, standing, and walking; and that the ALJ had noted in his decision the plaintiff's testimony about his inability to stand. *Id.* The court concluded, "[W]e believe that the ALJ implicitly found that Mr. Depover was not limited in these functions, and in this instance we do not see any reason to remand to make the findings explicit." *Id.* at 567-68.

In addition, several district courts within the Eighth Circuit have found no reversible error in situations very similar to the one here, in which the ALJ expressed the plaintiff's RFC and/or

---

pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible.

9

the hypothetical question to the VE in terms of "light work" without setting forth specific functional limitations in sitting, walking, standing, lifting, or carrying, but did include some other physical limitations. *See Linze v. Colvin*, No. 4:12-CV-1113-CDP, 2013 WL 5442766, at *6 (E.D. Mo. Sept. 30, 2013) (rejecting the plaintiff's argument that the ALJ's hypothetical question was incomplete because it described an individual capable of performing "the full range of light work"; stating, "The ALJ described an individual who could do light work in his hypothetical question and, so, provided a functional assessment of Linze's abilities. The vocational expert's answer to that question supplies substantial evidence to support the ALJ's finding that Linze could return to her past relevant work.") (citing *Depover*, 349 F.3d at 568); *Biggs v. Astrue*, Civ. No. 11-3066, 2012 WL 3637642, at *1, *8 (W.D. Ark. Aug. 23, 2012) (rejecting the plaintiff's argument that remand was required based on a violation of SSR 96-8p where the ALJ determined that the plaintiff retained the RFC to perform "light work" but did not make specific findings with regard to sitting, standing, walking, or lifting; noting that light work is defined in the regulations and that the ALJ had made additional findings with regard to the plaintiff's limitations in areas such as climbing, stooping, bending, and crouching); *Arant v. Astrue*, No. 5:11-6004-DGK-SSA, 2012 WL 1067740, at *3-*4 (W.D. Mo. Mar. 29, 2012) (rejecting the plaintiff's argument that remand was required because the ALJ's RFC was expressed in terms of "light work as defined in 20 C.F.R. § 416.967(b)" and did not specify maximum capabilities of sitting, standing, or walking; finding that the RFC finding was not vague or contrary to the requirements of SSR 96-8p); *Rogalaski v. Astrue*, No. 4:10 CV 2391 DDN, 2011 WL 5914017, at *9 (E.D. Mo. Nov. 28, 2011) (rejecting the plaintiff's argument that remand was required because the ALJ expressed the RFC determination in terms of the exertion required for "light" work, in violation of SSR 96-8p; stating that "[w]hile the ALJ did express plaintiff's RFC in terms of the 'light' exertional category, the ALJ also referred to the

appropriate statutory definitions of 'light,' and specifically addressed plaintiff's ability to bend, stoop, crouch and crawl" and that the ALJ's RFC determination was "supported by a narrative discussion"); *Cook v. Astrue*, 629 F. Supp. 2d 925, 933 (W.D. Mo. 2009) (rejecting the argument that remand was required where the ALJ described Plaintiff's RFC in terms of "light work" without a function-by-function analysis; finding that "the ALJ's RFC of light work implicitly made findings as to claimant's ability to do work-related activities," noting that in the hypothetical posed to the VE, the ALJ described specific limitations on exposure to chemicals, ability to reach overhead with the left upper extremity, and need for low-stress tasks, and stating that "while it may be better practice to make specific objective physical characteristics findings in the ALJ's determination of RFC, a failure to do so is not reversible error when the ALJ has sufficiently developed the record as to Plaintiff's RFC" ).

The Court finds the reasoning of the above cases persuasive and applicable to this case.[3] As in most of those cases, although the ALJ here did not specifically describe Plaintiff's ability to sit, stand, walk, lift, carry, push or pull, she did include specific limitations in several other physical functions, including the ability to climb ramps and stairs; stoop; kneel; crouch; climb ladders, ropes and scaffolds; crawl; handle; finger; feel; and be around hazards such as unprotected heights and dangerous machinery. Moreover, the ALJ did pose an alternative hypothetical question describing an individual who was capable of sedentary work, suggesting that she did not overlook the possibility that Plaintiff had more significant limitations in standing, walking, lifting, or carrying than those required for a full range of light work. In addition, the ALJ conducted a detailed review of Plaintiff's allegations (including her claimed limitations in sitting, standing, and walking) and

---

[3] Although the Commissioner cited some of these cases in her brief, Plaintiff made no attempt to distinguish them from the instant case in her Reply, nor has Plaintiff directed the Court to any cases finding reversible error based on an ALJ's expression of the RFC in terms of light work.

the medical record, and she offered several reasons why she found Plaintiff's allegations not credible, suggesting that she considered and rejected the possibility that Plaintiff had limitations more significant than those the ALJ specifically identified in the RFC and hypothetical question. The most reasonable reading of the ALJ's decision is that she found Plaintiff capable of performing the full range of light work, with the exception of the specific areas in which she found that Plaintiff had limitations. The hypothetical question posed to the VE accurately reflected that RFC finding. Although it would certainly have been preferable for the ALJ to make specific findings about each physical function, the failure to do so in this case does not require reversal.

The Court further notes that Plaintiff does identify any particular aspect of light work that she is unable to perform, nor does Plaintiff point to any medical or other evidence in the record to suggest that any of the ALJ's RFC findings are not supported by substantial evidence. The Court agrees with the Commissioner that the ALJ's finding that Plaintiff could perform all of the requirements of light work, except as indicated in her decision, is supported by substantial evidence. That includes evidence that she did not consistently report to her treatment providers the symptoms she complained of; that her treatment was routine and conservative in nature; that her symptoms (including pain) were significantly reduced with medication and treatment; that she was not entirely compliant with treatment recommendations, suggesting that her symptoms were not as limiting as she alleged; and that there were inconsistencies between Plaintiff's complaints of very significant limitations and her reported daily activities. (Tr. 461-69).

For all of the above reasons, the Court finds no reversible error with respect to the ALJ's failure to conduct a function-by-function analysis of Plaintiff's RFC.

## C. The ALJ's Reliance on the Testimony of the Vocational Expert

Plaintiff's next argument is that the ALJ erred in her reliance on the testimony of the VE that there were other jobs a person with Plaintiff's RFC to could perform. Plaintiff argues that because her RFC limits her ability to handle, finger, and feel with only one extremity, and the DOT does not address one-handed manipulative limitations, the VE's testimony was not supported by the DOT. Plaintiff argues that because the information provided by the VE was outside the scope of the DOT and the VE offered no other reliable basis for the testimony, the ALJ erred by relying on it. Plaintiff argues that therefore the ALJ's determination at Step Five was not supported by substantial evidence.

At Step Five, the Commissioner bears the burden of establishing that the claimant maintains the RFC to perform a significant number of jobs within the national economy. *See Moore*, 572 F.3d at 523. The ALJ may rely on the testimony of a VE to establish that the claimant can perform other work existing in significant numbers. *See Pearsall*, 274 F.3d at 1220. However, in making disability determinations, the Social Security Administration "rel[ies] primarily on the DOT (including its companion publication, the SCO [Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles]) for information about the requirements of work in the national economy," and "[o]ccupational evidence provided by a [VE] generally should be consistent with the occupational information supplied by the DOT." Social Security Ruling 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000).[4] Thus, "When there is an apparent unresolved conflict between [VE] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the [VE] evidence to support a determination or

---

[4] For purposes of this discussion, the Court will generally refer to the DOT and its companion volume, the SCO, as simply the "DOT."

decision about whether the claimant is disabled." *Id.* In addition, "[e]vidence from [VEs] can include information not listed in the DOT." *Id.* "Information about a particular job's requirements or about occupations not listed in the DOT may be available in other reliable publications, information obtained directly from employers, or from a [VE's] experience in job placement or career counseling." *Id.*

The Court begins with a review of the VE's testimony. As discussed above, Plaintiff's RFC limits her to only occasional handling, fingering, and feeling with the right upper extremity; she has no limitations on handling, fingering, or feeling with the left upper extremity. At the hearing, the VE testified that a person who had Plaintiff's RFC, except that she could *frequently* handle, finger, and feel with the right upper extremity, would be able to perform the jobs of assistant fast food manager, bench assembler, and housekeeping/cleaner. (Tr. 549-50). The VE noted that "the DOT of course doesn't break out the manipulative restrictions apart from bilateral, so these are jobs that would require a bilateral ability to frequently reach, handle the finger [sic]." (Tr. 550). The ALJ then changed the hypothetical question to include a limitation to only occasional handling, fingering, and feeling with the right upper extremity (a hypothetical that reflected the RFC assessment in this case). (Tr. 551). The VE testified that the jobs he had previously identified would be eliminated, because they required bilateral frequent handling, fingering, and feeling. (Tr. 551). He stated, "[W]hat I'll have to do is give you examples of reach, handling and finger bilaterally on an occasional basis." He then identified the jobs of counter clerk and tanning salon attendant. (Tr. 552). He testified that his testimony was consistent with the DOT. (Tr. 552). Plaintiff's counsel then changed the hypothetical to an individual who could only do occasional reaching, handling, and fingering with the right upper extremity, and who was limited to sedentary work, and the VE testified that the job of call-out operator would be available. (Tr. 553). In his

14

decision, the ALJ cited the VE's testimony about the jobs of counter clerk, tanning salon attendant, and call-out operator to support her finding at Step Five that there were jobs existing in significant numbers in the national economy that Plaintiff could do. (Tr. 470).

Plaintiff does not dispute that the jobs of counter clerk, tanning salon attendant, and call-out operator require only occasional handling, fingering, and feeling. Moreover, this conclusion is supported by the DOT, at least for two of the three jobs identified by the VE. The job of counter clerk (18,000 jobs nationally) requires only occasional handling, occasional fingering, and no feeling. *See* DOT 249.366-010, 1991 WL 672323. Similarly, the job of call-out operator (12,500 jobs nationally) requires only occasional handling, occasional fingering, and no feeling. *See* DOT 237.367-014, 1991 WL 672186.[5]

Instead, Plaintiff's argument is that because Plaintiff has one-handed limitations in handling, fingering, and feeling, and the DOT does not address whether jobs are consistent with one-handed limitations in handling, fingering, and feeling, the VE's testimony provided information that went "beyond" the DOT or was "not described within" the DOT. That argument is without merit. The DOT expressly addresses the handling, fingering, and feeling requirements of the jobs of counter clerk and call-out operator. These jobs require only occasional handling and fingering, and no feeling. It is unclear whether they require occasional handling and fingering with both hands, or only occasional handling and fingering with one hand. However, that is of no consequence. Either way, a person with Plaintiff's RFC is more than capable of doing those jobs,

---

[5] The Court has been unable to locate specific handling, fingering, or feeling requirements for the job of tanning salon attendant. However, the job of tanning salon attendant represented only 1,100 jobs nationally, whereas the other two jobs identified represented 18,000 jobs and 12,500 jobs, respectively. Thus, even if the tanning salon attendant jobs were disregarded, there would still be a significant number of jobs existing in the national economy that Plaintiff could perform, and the ALJ's Step Five conclusion would remain the same.

15

because she can at least occasionally handle and finger with each of her hands. Thus, the DOT plainly and fully supports the VE's testimony that a person with Plaintiff's RFC can do these jobs. There was no need for the VE to provide a separate basis for the obvious and logical point that a person who can do something in an unlimited manner with one hand and occasionally with the other hand can do that thing occasionally with both hands.[6]

Plaintiff states that the VE "stated that he could not rely upon the DOT for a basis." Pl.'s Br., Doc. 14, at 13. That is not an accurate reflection of the VE's testimony. The VE simply testified that the DOT does not break down manipulative requirements by individual upper extremity. (Tr. 550-51). Thus, when asked for jobs that a person with a limitation to occasional manipulation in one extremity, the ALJ noted that he would have to identify jobs that a person with occasional manipulations in both extremities could do. By so limiting his testimony, he was ensuring that his testimony was supported by the DOT and did not require some other basis of support.

The cases on which Plaintiff relies are entirely inapposite. In *Beringer v. Colvin*, No. 4:15-CV-1412 NAB, 2016 WL 4762080, at *3-*4, the VE opined that an individual with functional limitations involving stress level, frequency of decision-making, frequency of changes in work setting, and frequency of contact with supervisors could do certain jobs, without providing a basis for that testimony. *Id.* at 3-4. The court reversed and remanded the case for further proceedings,

---

[6] Plaintiff's argument might have merit if the vocational expert had identified jobs that, according to their DOT description, might exceed Plaintiff's functional capacity. For example, if the vocational expert had found that a person with Plaintiff's RFC (who had unlimited handling, fingering, and feeling ability in her left hand but only the ability to occasionally handle, finger, and feel with her right hand) could perform a job that (according to the DOT) required frequent handling, fingering, and feeling, then the DOT would not provide a basis for that opinion, and the vocational expert would likely need to provide some basis for that opinion. However, that is not the case here.

noting that the functional limitations highlighted by the plaintiff were "outside the scope of the DOT." *Id.* at *5. It stated, "[I]f the VE identifies jobs that the hypothetical individual can perform including the limitations not addressed by the DOT, then the VE must state the basis for his or her knowledge that the jobs identified could be performed by the hypothetical individual." *Id. Beringer* is of no help to Plaintiff because in *Beringer*, the Plaintiff had limitations that were entirely outside the scope of, and not addressed by, the DOT. Here, in contrast, the limitations at issue—limitations in ability to handle, finger, and feel—*are* addressed in the DOT. The VE's testimony was based on the descriptions of the limitations in the DOT, not on some unidentified outside source of knowledge.

In *Moore v. Colvin*, 769 F.3d 987 (8th Cir. 2014), the VE testified that a hypothetical individual who could only occasionally perform overhead reaching bilaterally could do certain jobs that were described in the DTO as requiring "frequent" overhead reaching. *Id.* at 989. The Eighth Circuit reversed, finding an unresolved conflict between the testimony the ALJ relied on and the DOT. *Id.* at 989-90. *Moore* is of no help to Plaintiff because in *Moore*, the job described in the DOT required activities that were more demanding that the plaintiff's RFC permitted, such that it was unclear on what basis the VE believed the plaintiff could perform those jobs. In this case, in contrast, the jobs described in the DOT require activities that are *less* demanding than Plaintiff's RFC permits, such that the DOT clearly provides a basis for the VE's testimony that Plaintiff could perform those jobs.

In sum, the VE's testimony that a hypothetical individual with Plaintiff's RFC could perform the jobs of counter clerk and call-out operator was supported by the DOT, and the ALJ did not err in relying on the VE's testimony to find that there were jobs existing in significant numbers in the national economy that Plaintiff could perform.

## V. CONCLUSION

For all of the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

/s/ Shirley Padmore Mensah
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 28th day of September, 2017.